**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **HASSAN CREDLE,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 26-CV-1323** |
| | : | |
| **WORLD OMNI FINANCIAL CORP.,** | : | |
| **Defendant.** | : | |

**<u>MEMORANDUM</u>**

**YOUNGE, J.**                                                          **MARCH 12, 2026**

Plaintiff Hassan Credle claims that Defendant World Omni Financial Corp. d/b/a

Southeast Toyota Finance ("World Omni") violated the Fair Credit Reporting Act ("FCRA") by

failing to correct inaccurate information that appeared on his credit report.  Credle seeks leave to

proceed *in forma pauperis*.  For the following reasons, the Court will grant Credle leave to

proceed *in forma pauperis* and dismiss his Complaint for lack of standing.

**I.      FACTUAL ALLEGATIONS**[1]

Credle alleges that World Omni incorrectly reported delinquency and charge-off dates for

a credit account he held with the company.  He contends his account first became delinquent in

September 2021, but that World Omni reported to Equifax, a credit reporting company, that the

first delinquency occurred in October 2021.  (Compl. at 2-3, ¶¶ 9-12.)  Reporting the

delinquency at a later date re-aged the account, which made it "appear newer and less derogatory

than it actually was."[2]  (*Id.* at 3, ¶¶ 13-14.)  World Omni also inaccurately reported that the

---

[1] The following allegations are taken from the Complaint.  The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] Presumably, Credle meant to convey that the change was "more" rather than "less" derogatory, but that is not what he wrote.

account was charged off in January 2022, instead of December 2021, which "further contributed to the re-aging" of Credle's account.[3]  (*Id.* ¶¶ 15-18, 23.)

On January 14, 2026, while Credle was "performing his routine year-beginning diligence review, [he] discovered the inaccurate reporting on his Equifax consumer report."  (*Id.* ¶ 20.)  He "immediately" disputed the inaccuracies with Equifax and provided supporting documentation reflecting that the reported dates were off by a month.  (*Id.* at 3-4, ¶¶ 24-26.)  Equifax forwarded Credle's dispute letter and documentation to World Omni.  (*Id.* at 4, ¶¶ 29-30.)  "[A] few days later" Equifax notified Credle that the results of its investigation were available.  (*Id.* ¶ 30.)

Credle reviewed his Equifax report, but nothing had changed, *i.e.*, the date of first delinquency and charge-off for the account were not corrected.  (*Id.* ¶¶ 31-34.)  He contends that World Omni's investigation was not reasonable because "[i]t is implausible that [it] could have conducted a thorough, independent investigation—including review of all proofs [he] provided—in only a few days," and must have instead "relied exclusively on its own internal records and notes."  (*Id.* ¶¶ 35-38.)  On January 30, 2026, Credle sent a letter with his documentation to World Omni demanding correction of the inaccuracies, but World Omni "refused to respond, investigate, or correct the inaccurate reporting" despite receiving the letter. (*Id.* ¶¶ 39-41.)

---

[3] "When a furnisher provides information to a [consumer reporting agency ("CRA")] regarding an account placed for collection or charged to profit or loss, the furnisher then has 90 days in which to notify the CRA of the account's 'date of delinquency,' which is defined as 'the month and year of the commencement of the delinquency on the account that immediately preceded the action.'" *Seamans v. Temple Univ.*, 744 F.3d 853, 860 (3d Cir. 2014) (quoting 15 U.S.C. § 1681s-2(a)(5)(A)).  "The date of delinquency enables the CRA to calculate the seven-year window for 'aging-off' purposes—without it, the CRA would be unable to determine when the account had been placed for collection, rendering the 'aging-off' date impossible to calculate." *Id.* (footnote omitted).  An aged-off debt may no longer be reported by the CRA.  *Id.*

Based on these allegations, Credle brings claims against World Omni for negligently and willfully failing to conduct a reasonable investigation in violation of the FCRA, 15 U.S.C. § 1681s-2(b). (*Id.* at 5-6; *see also id.* at 1, ¶ 2 (alleging that World Omni "furnished inaccurate date-of-first-delinquency and charge-off information to Equifax, re-aged [Credle's] account, performed a sham investigation after receiving notice of [the] dispute, and ignored [his] direct demand for correction, causing [him] concrete harm").) He claims to have "suffered actual damages, including severe financial loss, emotional distress, mental distress, and credit denials." (*Id.* at 5, ¶ 45.) He seeks damages. (*Id.* at 6.)

## II.    STANDARD OF REVIEW

Because Credle appears to be incapable of paying the filing fees to commence this action, the Court will grant him leave to proceed *in forma pauperis*. Accordingly, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. The Court must determine whether the Complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). At this early stage of the litigation, the Court will accept the facts alleged in the *pro se* Complaint as true, draw all reasonable inferences in Credle's favor, and ask only whether the Complaint contains facts sufficient to state a plausible claim. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024). Conclusory allegations do not suffice. *Iqbal*, 556 U.S. at 678. Because Credle is proceeding *pro se*, the Court construes his allegations liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

Furthermore, the Court must dismiss any claims over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."); *Grp. Against Smog and Pollution, Inc. v. Shenango, Inc.*, 810 F.3d 116, 122 n.6 (3d Cir. 2016) (explaining that "an objection to subject matter jurisdiction may be raised at any time [and] a court may raise jurisdictional issues *sua sponte*"). A plaintiff commencing an action in federal court bears the burden of establishing federal jurisdiction. *See Lincoln Benefit Life Co. v. AEI Life, LLC*, 800 F.3d 99, 105 (3d Cir. 2015) ("The burden of establishing federal jurisdiction rests with the party asserting its existence."). The Court's continuing obligation to assure its jurisdiction includes an assessment of whether the plaintiff has standing to raise his claims. *Seneca Res. Corp. v. Township of Highland*, 863 F.3d 245, 252 (3d Cir. 2017) ("Our 'continuing obligation' to assure that we have jurisdiction requires that we raise issues of standing . . . sua sponte.").

## III.   DISCUSSION

"The FCRA was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner." *Cortez v. Trans Union, LLC*, 617 F.3d 688, 706 (3d Cir. 2010) (cleaned up). "Under FCRA, [consumer reporting agencies] collect consumer credit data from 'furnishers,' such as banks and other lenders, and organize that material into individualized credit reports, which are used by commercial entities to assess a particular consumer's creditworthiness." *Seamans*, 744 F.3d at 860. To state a plausible claim against a furnisher of credit information under § 1681s-2(b), as Credle attempts to do in this case, a plaintiff must allege that he "[1] filed a notice of dispute with a consumer reporting agency; [2] the consumer reporting agency notified the furnisher of information of the dispute; and [3] the

furnisher of information failed to investigate and modify the inaccurate information." *Harris v. Pa. Higher Educ. Assistance Agency/Am. Educ. Servs*., No. 16-693, 2016 WL 3473347, at *6 (E.D. Pa. June 24, 2016) (collecting cases), *aff'd*, 696 F. App'x 87 (3d Cir. 2017) (*per curiam*).

A plaintiff must also establish that he has standing to bring an FCRA claim. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). To do so, he must "clearly allege facts demonstrating" that he "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Id.* (alterations and citations omitted). As to the first requirement, a plaintiff's injury must be concrete and particularized. *TransUnion LLC v. Ramierz*, 594 U.S. 413, 423-24 (2021). A statutory violation does not automatically translate into standing to sue. *Id.* at 425-26. Rather, a plaintiff must allege either tangible harm—such as physical or monetary harm—or intangible harm that bears "a close relationship to harms traditionally recognized as providing a basis for lawsuits in American courts." *Id.* at 425. If a credit report contains misleading information but was never disseminated, a plaintiff does not suffer concrete harm for purposes of establishing standing. *George v. Rushmore Serv. Ctr., LLC*, 114 F.4th 226, 235 (3d Cir. 2024) (citing *TransUnion*, 594 U.S. at 43-35).

Credle claims to have "suffered actual damages, including severe financial loss, emotional distress, mental distress, and credit denials." (Compl. at 5, ¶ 45.) However, he has not adequately explained how World Omni's inaccurate reporting of a debt by one month caused the claimed harm. For instance, he has not alleged what credit he applied for and why it was denied, so as to support an inference that any credit denial is traceable to World Omni's misreporting of a debt by one month. *See Hayward v. USAA Fed. Sav. Bank*, No. 24-5602, 2025 WL 1094255, at *4 (E.D. Pa. Apr. 11, 2025) (holding that plaintiff's "conclusory statement that as a direct

5

result of Kik Off's alleged actions, she has suffered a credit denial, with no factual information about who denied her credit and why the denial is traceable to Kik Off's conduct" failed to allege "concrete injuries" for purposes of the standing inquiry (cleaned up)).  Although he alludes to "severe financial loss", he does not provide any context or information about his finances nor describe how any loss could be reasonably attributed to the alleged error on his credit report.  Further, Credle's allegations of emotional and mental harm are too undeveloped and conclusory to allege standing.  *See Byrd Est. v. Nationstar Mortg., LLC*, No. 24-1063, 2025 WL 3172843, at *5 (E.D. Pa. Nov. 13, 2025) (finding allegations of "economic harm, reputational damage, litigation costs, and emotional distress" to be "no more than conclusions" that "are not entitled to the assumption of truth" (citations omitted)); *see also Filgueiras v. Midland Funding, LLC*, No. 16-3037, 2025 WL 2637171, at *6 (D.N.J. Aug. 22, 2025) ("[S]parsely identified alleged harm is insufficient to confer standing."), *report and recommendation adopted*, 2025 WL 2636416 (D.N.J. Sept. 11, 2025).  In sum, the Complaint does not plausibly allege Credle suffered concrete harm traceable to World Omni's conduct in a manner that would permit the Court to conclude he has standing to pursue his FCRA claims.

## IV.    CONCLUSION

For the foregoing reasons, the Court will grant Credle leave to proceed *in forma pauperis* and dismiss his Complaint without prejudice.  He will be given leave to file an amended complaint in the event he can state a basis for proceeding.  An appropriate Order follows, which provides further instructions about filing an amended complaint.

**BY THE COURT:**

*/s/ John Milton Younge*

_____

**JOHN MILTON YOUNGE, J.**
